1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN PATRICK WINKLEMAN,              No.  2:13-cv-1480 MCE DAD P

12                Plaintiff,

13        v.                              ORDER AND

14   CDCR,                                FINDINGS AND RECOMMENDATIONS

15                Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under

18   42 U.S.C. § 1983.  This matter is before the court on a motion to dismiss brought on behalf of

19   defendants California Department of Corrections and Rehabilitation, Anthony, and Nicolau.

20   Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

21                                    **BACKGROUND**

22        Plaintiff is proceeding on his original complaint against defendants California Department

23   of Corrections and Rehabilitation ("CDCR"), Nurse Anthony, and Nurse Nicolau.  Therein

24   plaintiff alleges as follows.  Plaintiff is a medical unit porter, and his duties include sweeping,

25   mopping, wiping surfaces, dumping garbage, and issuing clothing.  On October 30, 2012, plaintiff

26   noticed that inmate Buck had been placed in the Outpatient Housing Unit ("OHU") shower and

27   was splashing soap, water, and bodily fluids onto the OHU tier walkway.  Plaintiff brought

28   inmate Buck's actions to the attention of custody staff, and they told inmate Buck to take more

                                            1

1  care.  Inmate Buck said that the nurses told him to wash his gauze out, so that's what he was

2  doing.  Inmate Buck noted that if he had his bag attached to his stomach, he would not have to do

3  it.  Eventually, plaintiff began cleaning the walls of the OHU shower area and noticed that he was

4  cleaning what appeared to be feces, urine, and other bodily fluids.  He jerked his hand back and

5  scraped his elbow on the shower wall exposing his broken skin to Buck's fluids.  Plaintiff went to

6  the nursing station where custody and nursing staff informed him for the first time that inmate

7  Buck was positive for both HIV and Hepatitis C.  (Compl. at 3-7.)

8      Plaintiff claims that defendants Anthony and Nicolau refused to provide him with the

9  emergency prophylactic medication to prevent him from contracting inmate Buck's infectious

10  diseases.  According to plaintiff, there is a limited three-hour window during which time the

11  preventative medicine is most effective.  Plaintiff alleges that the defendants attempted to

12  dissuade him from seeking the treatment to cover up the fact that they had allowed inmate Buck

13  to be transported to OHU without the proper colostomy bag in place.  For example, plaintiff

14  alleges that the defendants told him that a transportation officer was also exposed to inmate Buck

15  the same day, and they offered her the preventative medication but she refused it.  Ultimately,

16  plaintiff explains that the only medical care he received that day consisted of antibiotic ointment,

17  a bandage, and a tetanus shot.  On the following day, plaintiff saw and spoke to a doctor who

18  provided him with preventative medication.  The doctor told plaintiff that the medication was an

19  aggressive approach due to the delay in administering it, but plaintiff did not have much of a

20  choice at that point.  Plaintiff began the medication regimen and experienced extreme nausea,

21  exhaustion, and uncontrolled vomiting for several days.  (Compl. at 7-15.)

22      According to plaintiff, CDCR trained him with the proper precautions to observe in case

23  of infectious disease exposure.  However, plaintiff alleges medical personnel failed to follow

24  protocol when they allowed inmate Buck to leave the A Facility - Treatment and Triage area and

25  enter OHU without his colostomy bag in the first place.  Plaintiff alleges that he was never told

26  that inmate Buck was infectious until he had been exposed to Buck's infectious fluids.  Plaintiff

27  maintains that CDCR's policies as they relate to what precautions inmates and employees must

28  take to prevent possible infection as well as the deliberate indifference on the part of defendants

1    Anthony and Nicolau caused his injuries.  In terms of relief, plaintiff requests injunctive relief and

2    monetary damages.  (Compl. at 3-19.)

3                                                            **ANALYSIS**

4    I.  Motion Pursuant to Rule 12(b)(6)

5           A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

6    tests the sufficiency of the complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578,

7    581 (9th Cir. 1983).  Dismissal of the complaint, or any claim within it, "can be based on the lack

8    of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

9    theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  See also

10   Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In order to survive

11   dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of

12   the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to

13   relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

14          In determining whether a pleading states a claim, the court accepts as true all material

15   allegations in the complaint and construes those allegations, as well as the reasonable inferences

16   that can be drawn from them, in the light most favorable to the plaintiff.  Hishon v. King &

17   Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740

18   (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In the context of a motion to

19   dismiss, the court also resolves doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S.

20   411, 421 (1969).  However, the court need not accept as true conclusory allegations, unreasonable

21   inferences, or unwarranted deductions of fact.  W. Mining Council v. Watt, 643 F.2d 618, 624

22   (9th Cir. 1981).

23          In general, pro se pleadings are held to a less stringent standard than those drafted by

24   lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe

25   such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

26   However, the court's liberal interpretation of a pro se complaint may not supply essential

27   elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d

28   266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

                                                                  3

1    II.  Discussion

2           In the pending motion to dismiss, defense counsel argues that:  (1) the Eleventh

3    Amendment bars plaintiff's suit for damages against defendant CDCR; (2) plaintiff lacks standing

4    to support his request for injunctive relief against defendant CDCR; (3) plaintiff fails to state a

5    cognizable claim against defendants Anthony and Nicolau; and (4) defendants Anthony and

6    Nicolau are entitled to qualified immunity.  (Defs.' Mot. to Dismiss at 5-13.)  The court will

7    address each of defendants' contentions in turn.

8           (1) The Eleventh Amendment Bars Plaintiff's Damages Suit Against CDCR

9           The court agrees with defense counsel that the Eleventh Amendment bars plaintiff's

10   damages suit against CDCR.  In the absence of a waiver by the state or a valid congressional

11   override, under the Eleventh Amendment, state agencies are immune from private causes of

12   action for damages brought in federal court.  See Dittman v. California, 191 F.3d 1020, 1025-26

13   (9th Cir. 1999).  The State of California has not waived immunity under the Eleventh Amendment

14   for claims brought against it under § 1983 in federal court.  See id.  In addition, the Supreme

15   Court has held that Congress did not intend for §1983 to abrogate a state's Eleventh Amendment

16   immunity.  See id.

17          Accordingly, defendants' motion to dismiss plaintiff's suit for damages against defendant

18   CDCR should be granted.

19          (2) Plaintiff Lacks Standing to Support His Request for Injunctive Relief against CDCR

20          The court also agrees that plaintiff lacks standing to support his request for injunctive

21   relief against defendant CDCR.  To establish standing, a plaintiff (or the party invoking federal

22   jurisdiction) has the burden of showing that:  (1) he has suffered an "injury in fact"; (2) there is "a

23   causal connection between the injury and the conduct complained of"; and (3) it is likely as

24   opposed to speculative "that the injury will be redressed by a favorable decision" from the court.

25   Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  In addition, where a plaintiff seeks

26   prospective injunctive relief "he must demonstrate that he is realistically threatened by a

27   repetition of [the violation]."  Armstrong v. Davis, 275 F.3d 849, 860-61 (9th Cir. 2001),

28   abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504-05 (2005).  See also City

4

1  of Los Angeles v. Lyons, 461 U.S. 95 (1983) ("past exposure to illegal conduct does not in itself

2  show a present case or controversy regarding injunctive relief if unaccompanied by any

3  continuing, present adverse effects.").  Finally, under the Prison Litigation Reform Act,

4  "[p]rospective relief in any civil action with respect to prison conditions shall extend no further

5  than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."

6  18 U.S.C. § 3626(a)(1)(A).

7         In this case, plaintiff requests injunctive relief that would require defendant CDCR to

8  revise and implement policies for inmate employees that would protect them from being exposed

9  to potentially bio-hazardous conditions.  (Compl. at 18.)  As an initial matter, plaintiff may not

10  assert legal rights on behalf of third parties, such as other inmate employees.  See Gonzales v.

11  Cal. Dep't of Corrs., 739 F.3d 1226, 1234 (9th Cir. 2014).  Moreover, plaintiff has not shown that

12  he is threatened by repetition of the circumstances he complains of in this case as is required for

13  prospective injunctive relief.  Finally, in his opposition to the pending motion to dismiss, plaintiff

14  acknowledges that defendant CDCR has remedied the policies at issue in response to this incident

15  involving plaintiff.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3.)  In this regard, plaintiff appears

16  to concede that his request for injunctive relief has now been rendered moot.  (Id.)

17         Accordingly, for all of the foregoing reasons, defendants' motion to dismiss plaintiff's

18  request for injunctive relief against defendant CDCR should be granted.

19         (3) Plaintiff's Complaint States a Cognizable Claim under the Eighth Amendment

20         The court finds unpersuasive defense counsel's argument that plaintiff's complaint fails to

21  state a cognizable claim under the Eighth Amendment against defendants Anthony and Nicolau.

22  To maintain an Eighth Amendment claim based on inadequate medical care, a prisoner-plaintiff

23  must allege facts showing "deliberate indifference to serious medical needs."  Estelle v. Gamble,

24  429 U.S. 97 (1976).  In the Ninth Circuit, a deliberate indifference claim has two components:

25           First, the plaintiff must show a "serious medical need" by
           demonstrating that "failure to treat a prisoner's condition could
26           result in further significant injury or the 'unnecessary and wanton
           infliction of pain.'"  Second, the plaintiff must show the
27           defendant's response to the need was deliberately indifferent.  This
           second prong—defendant's response to the need was deliberately
28           indifferent—is satisfied by showing (a) a purposeful act or failure

5

1           to respond to a prisoner's pain or possible medical need and (b)
2           harm caused by the indifference.  Indifference "may appear when
        prison officials deny, delay or intentionally interfere with medical
        treatment, or it may be shown by the way in which prison
3           physicians provide medical care." (internal citations omitted)

4   Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

5         Accepting as true plaintiff's material allegations and construing those allegations and the

6   reasonable inferences that can be drawn from them in the light most favorable to the plaintiff,

7   plaintiff's complaint states a cognizable deliberate indifference medical care claim.  In his

8   complaint, plaintiff alleges that he had been exposed to another inmate's bodily fluids and that the

9   named defendants knew that other inmate was infected with HIV and Hepatitis C.  In this regard,

10  plaintiff has adequately alleged that he had a "serious medical need" that if left untreated "could

11  result in further significant injury or the 'unnecessary wanton infliction of pain.'"  See Jett, 439

12  F.3d at 1096.  In addition, plaintiff alleges that he begged the defendants for preventative medical

13  care and repeatedly asked them to call the doctor on call, but that the defendants dismissed his

14  expressed concerns and refused to provide him with anything more than antibiotic ointment, a

15  bandage, and a tetanus shot.  According to the allegations of plaintiff's complaint, defendants

16  tried to dissuade him from seeking further medical care because they were more concerned about

17  covering up their failure to comply with prison policies and procedures that prohibited allowing

18  inmate Buck to be sent from A-TTA to OHU without a colostomy bag.  In this regard, plaintiff

19  has adequately alleged that defendants intentionally failed to act in response to plaintiff's serious

20  medical needs resulting in his suffering and harm.

21        If plaintiff proves his allegations to be true, he has a reasonable opportunity to prevail on

22  the merits of his deliberate indifference medical care claim.  See Farmer v. Brennan, 511 U.S. 825

23  (1994) (deliberate indifference to a medical need is shown when a prison official knows that an

24  inmate has a serious medical need and disregards that need by failing to respond reasonably);

25  Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) ("A prisoner need not prove that

26  he was completely denied medical care."); McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.

27  1991) ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible

28  /////

1    medical need in order for deliberate indifference to be established."), overruled on other grounds

2    by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

3        Indeed, on a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately

4    prevail but whether the claimant is entitled to offer evidence to support the claims." Jackson v.

5    Carey, 353 F.3d 750, 755 (9th Cir. 2003). In fact, "it may appear on the face of the pleadings that

6    a recovery is very remote and unlikely but that is not the test." Id. Here, the court finds that

7    plaintiff's complaint alleges sufficient facts to plausibly suggest that he is entitled to relief under

8    the Eighth Amendment. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial

9    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

10   inference that the defendant is liable for the misconduct alleged."); Bretz v. Kelman, 773 F.2d

11   1026, 1027 n.1 (9th Cir. 1985) (courts "have an obligation where the petitioner is pro se,

12   particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the

13   benefit of any doubt."); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("we continue to

14   construe pro se filings liberally when evaluating them under Iqbal."); al- Kidd v. Ashcroft, 580

15   F.3d 949, 977 (9th Cir. 2009) ("'Asking for plausible grounds to infer' the existence of a claim

16   for relief 'does not impose a probability requirement at the pleading stage; it simply calls for

17   enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' to prove that

18   claim."), rev'd on other grounds by Ashcroft v. al-Kidd, __ U.S. __ , 131 S. Ct. 2074 (2011).

19       Accordingly, defendants' motion to dismiss plaintiff's complaint for failure to state a

20   cognizable claim under the Eighth Amendment against defendants Anthony and Nicolau should

21   be denied.

22       (4) Qualified Immunity

23       The undersigned also finds unpersuasive defense counsel's argument that defendants

24   Anthony and Nicolau are entitled to qualified immunity. Government officials enjoy qualified

25   immunity from civil damages unless their conduct violates clearly established statutory or

26   constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v.

27   Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity

28   defense, the central questions for the court are: (1) whether the facts alleged, taken in the light

7

1   most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or

2   constitutional right; and (2) whether the right at issue was "clearly established."  Saucier v. Katz,

3   533 U.S. 194, 201 (2001).

4        The United States Supreme Court has held that "while the sequence set forth there is often

5   appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, 555 U.S. 223,

6   236 (2009).  In this regard, if a court decides that plaintiff's allegations do not make out a

7   statutory or constitutional violation, "there is no necessity for further inquiries concerning

8   qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that the right at

9   issue was not clearly established at the time of the defendant's alleged misconduct, the court may

10  end further inquiries concerning qualified immunity there without determining whether the

11  allegations in fact make out a statutory or constitutional violation.  See Pearson, 555 U.S. 236-

12  242.

13       "A government official's conduct violate[s] clearly established law when, at the time of

14  the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

15  official would have understood that what he is doing violates that right.'"  al-Kidd, 131 S. Ct. at

16  2083 (quoting Anderson v. Creighton, 483 U.S. 635 (1987)).  "[E]xisting precedent must have

17  placed the statutory or constitutional question beyond debate."  Id.  See also Clement v. Gomez,

18  298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the

19  law [at the relevant time] gave 'fair warning' to the officials that their conduct was

20  unconstitutional.") (quoting Saucier, 533 U.S. at 202).  The inquiry must be undertaken in light of

21  the specific context of the particular case.  Saucier, 533 U.S. at 201.  Because qualified immunity

22  is an affirmative defense, the burden of proof initially lies with the official asserting the defense.

23  Harlow, 457 U.S. at 812.

24       In this case, plaintiff has alleged in his complaint that defendants Anthony and Nicolau

25  intentionally failed to act in response to plaintiff's serious medical needs in order to cover-up

26  their own misconduct resulting in plaintiff's suffering and harm.  As explained above, viewing

27  these allegations in the light most favorable to plaintiff, defendants conduct violated plaintiff's

28  constitutional right to adequate medical care under the Eighth Amendment.  See Jett, 439 F.3d

8

1   1091, 1098 (defendants "are liable for deliberate indifference when they knowingly fail to

2   respond to an inmate's requests for help").  Moreover, "the general law regarding the medical

3   treatment of prisoners" was clearly established at the time of the alleged incident in 2012.

4   Clement, 298 F.3d at 906.  It was also clearly established at that time that prison officials and

5   prison medical personnel could not "intentionally deny or delay access to medical care."  Id.

6   Thus, any reasonable prison official in defendants' position would have known that refusing

7   plaintiff medical care under the circumstances alleged in this case would be a violation of the

8   Eighth Amendment.

9          Accordingly, defendants' motion to dismiss based on the affirmative defense of qualified

10  immunity should be denied at this time.

11                              **OTHER MATTERS**

12         Also pending before the court is defendants' motion to strike and defendants' motion for

13  summary judgment based on plaintiff's alleged failure to exhaust his administrative remedies

14  prior to filing suit as required.  First, defendants move to strike plaintiff's opposition to

15  defendants' motion to dismiss on the grounds that it appears that a fellow inmate prepared and

16  mailed the opposition for plaintiff and, instead of personally signing his opposition as required,

17  plaintiff's signature on his opposition is submitted as "/s/ John Patrick Winkleman/#K57302."

18  (Defs.' Mot. to Strike at 2.)

19         Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike

20  from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

21  matter."  Fed. R. Civ. P. 12(f).  Under Rule 7 of the Federal Rules of Civil Procedure, plaintiff's

22  opposition to defendants' motion to dismiss does not constitute a pleading.  Fed. R. Civ. P. 7(a).

23  Accordingly, the court will deny defendants' motion to strike as improper.[1]

24  ────────────────

25  [1]  Defense counsel's contentions in the pending motion to strike are well taken and the court
    cautions plaintiff that while he may seek informal assistance from fellow inmates, those inmates

26  may not represent him in these proceedings.  Unless plaintiff obtains counsel, he must represent
    himself in this action and is responsible for prosecuting this case.  In representing himself

27  plaintiff is required to comply with the applicable rules, including Federal Rule of Civil
    Procedure 11, which requires that as an unrepresented party, plaintiff sign every pleading, written

28  motion, and other paper submitted to the court.  See Fed. R. Civ. P. 11(a); E.D. Cal. Local Rule

                                        9

1   The court now turns to defendants' motion for summary judgment based on plaintiff's

2   alleged failure to exhaust administrative remedies.  Plaintiff has not opposed defendants' motion

3   on the grounds that defendants have not yet filed an answer in this case.

4   The undersigned interprets the Federal Rules of Civil Procedure to require that defendants

5   file a responsive pleading before or in conjunction with any motion for summary judgment.

6   Under Rule 7 of the Federal Rules of Civil Procedure, neither a motion for summary judgment

7   nor a motion to dismiss constitute a responsive pleading.  See Fed. R. Civ. P. 7(a).  Accordingly,

8   the court will deny defendants' motion for summary judgment without prejudice to refiling it with

9   an answer.

10                                         **CONCLUSION**

11         IT IS HEREBY ORDERED that:

12         1.  Defendants' motion to strike (Doc. No. 24) is denied; and

13         2.  Defendants' motion for summary judgment (Doc. No. 16) is denied without prejudice

14   to refiling it with an answer.

15         IT IS HEREBY RECOMMENDED that:

16         1.  Defendants' motion to dismiss (Doc. No. 15) be granted in part and denied in part as

17   follows:

18                    a.  Defendants' motion to dismiss plaintiff's suit for damages against defendant

19                    CDCR be granted;

20                    b.  Defendants' motion to dismiss plaintiff's request for injunctive relief against

21                    defendant CDCR be granted;

22                    c.  Defendant CDCR be dismissed from this action;

23                    d.  Defendants' motion to dismiss plaintiff's complaint for failure to state a claim

24                    against defendants Anthony and Nicolau be denied;

25                    e.  Defendants' motion to dismiss based on the affirmative defense of qualified

26                    immunity be denied; and

27

28   131(b).  Plaintiff is furthered cautioned that his failure to comply with the applicable rules in the
     future may be grounds for the imposition of sanctions, including possible dismissal of this action.

2.  Defendants Anthony and Nicolau be directed to file an answer within thirty days of any order adopting these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 13, 2015

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
wink1480.57

11